J-A26002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| HELEN B. LERNER, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FIFTEEN HUNDRED LOCUST LP, | : | No. 3016 EDA 2022 |
| BOZZUTO CORPORATION AND | : | |
| SERVPRO OF SOCIETY HILL | : | |

Appeal from the Order Entered October 28, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190702926

| HELEN B. LERNER, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FIFTEEN HUNDRED LOCUST LP, | : | No. 3017 EDA 2022 |
| BOZZUTO CORPORATION AND | : | |
| SERVPRO OF SOCIETY HILL | : | |

Appeal from the Order Entered October 28, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190702926

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 1, 2024**

In these cross-appeals, Helen B. Lerner, M.D. ("Dr. Lerner"), *pro se*, and Fifteen Hundred Locust L.P. ("Landlord") appeal from the October 28, 2022 order entered in the Philadelphia County Court of Common Pleas reversing the jury verdict against defendant Bozzuto Corporation ("Management Company")

and ordering a new trial on damages against Landlord. After careful review, we affirm.

The facts and procedural history relevant to this appeal are as follows. Landlord owns the apartment building at 1500 Locust Street and had retained Management Company to manage the building. Landlord and Dr. Lerner had entered into a Lease for one of the apartments ("Lease"). Management Company was not a party to the Lease.

On July 30, 2017, a toilet supply line burst, causing a flood in Dr. Lerner's apartment. Landlord and the Management Company (collectively referred to as "Appellees") attempted to remediate the damage to Dr. Lerner's apartment, but Dr. Lerner refused to cooperate.

**Preliminary Injunction Action**

On August 7, 2017, Appellees filed a complaint in equity seeking emergency injunctive relief alleging that Dr. Lerner was obstructing their efforts to remediate the flood. The trial court held a hearing the next day, at which Appellees elicited testimony that Dr. Lerner had excess possessions and a cockroach infestation in her apartment and that she had obstructed their remediation efforts. Appellees' witnesses also testified that Dr. Lerner was aggressive and hostile towards them and the employees of Servpro of Society Hill ("Servpro"), a remediation company that Dr. Lerner had hired to document the flood damage to her personal property. The witnesses also testified that Dr. Lerner would not allow Servpro to remove her possessions from the

apartment. Dr. Lerner, through counsel, cross-examined Appellees' witnesses at the hearing and presented evidence.

At the conclusion of the hearing, the trial court issued a preliminary injunction, requiring Dr. Lerner to remove herself and her possessions from the apartment by the next day, August 9, 2017. The court's order stated: "This [o]rder shall remain in effect until the [apartment] has been properly remediated and rendered suitable for occupation, at which point this [o]rder shall be rescinded." Order, 8/8/17. The trial court specifically noted on the record that it had found Appellees' witnesses credible. N.T. Hr'g, 8/8/17, at 62. Dr. Lerner did not appeal this order. On August 10, 2017, Appellees filed a *praecipe* notifying the trial court that this action had been settled, discontinued, and ended.

**The Instant Action**

Almost two years later, on July 24, 2019, Dr. Lerner filed a complaint against Appellees for, *inter alia*, breach of contract and abuse of process. She alleged that they had breached her lease by engaging in inadequate attempts to remediate the flood damage and by filing an improper motion to remove her from the property based on false claims that she had obstructed their remediation efforts. She claimed that, as a result, she suffered damage to and loss of her personal property and unlawful displacement. On August 19, 2019, Lerner amended her complaint to add Servpro as a defendant.

Appellees and Servpro filed preliminary objections, which the court sustained. On February 24, 2020, Dr. Lerner filed a second amended

complaint, asserting 45 counts against Appellees and Servpro. Appellees and Servpro responded by again filing preliminary objections. Dr. Lerner did not file a response to the preliminary objections.

On May 21, 2020, the trial court sustained Servpro's preliminary objections and dismissed Dr. Lerner's claims against Servpro with prejudice.[1] The court entered a separate order sustaining Appellees' preliminary objections and dismissing all counts against them with prejudice except for the count that alleged that Appellees breached the Lease.

On May 31, 2022, a jury trial commenced on Lerner's breach of the Lease claim against Appellees. Relevant to the instant appeal, during her opening statement, Dr. Lerner presented a PowerPoint presentation that exhibited those provision of the Lease that she alleged that Landlord and Management Company had breached.

Dr. Lerner also testified about various provisions of the Lease that Appellees had allegedly breached and again provided the jury with a PowerPoint presentation that included the provisions of the Lease on which Dr. Lerner based her complaint.[2] With respect to damages, Dr. Lerner

---

[1] The court dismissed Dr. Lerner's claims against Servpro with prejudice for failure to comply with Pa.R.Civ.P. 1019 and its mandate of conciseness. **See** Pa.R.Civ.P. 1019(a) ("The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."). Dr. Lerner has not appealed this order.

[2] These included provisions pertaining to "Responsibilities of Owner" and "Move-Out Notice," and "Move-Out Procedures." Lease, 3/16/17, at ¶¶ 33, 39, 40.

presented evidence of the value of each damaged or lost item and presented the jury with exhibits, again via a PowerPoint presentation, that showed the items. She also testified to her move-out costs, storage facility costs, inability to obtain future housing, rent payments and security deposit that were not refunded.

Dr. Lerner also presented two other witnesses—Landlord's former property manager, Michael Lerario, and its general manager and corporate representative, David McMurtrie—who provided testimony pertaining to, and acknowledging the existence of, the Lease between Dr. Lerner and Landlord. *See*, *e.g.*, N.T. Trial, 6/6/22, 117-118 (where McMurtrie identified a document as "our lease" between "Helen Lerner [and] 1500 Locust, LP.").

McMurtrie also acknowledged the existence of the Lease when he testified that it was Dr. Lerner, and not the Landlord, who breached the Lease by obstructing Appellees' remediation efforts. At the close of Dr. Lerner's case, however, Appellees moved for compulsory nonsuit arguing that Dr. Lerner had failed to establish the existence of an enforceable lease between the parties. The trial court denied Appellees' motion.

On June 7, 2022, the jury returned a $175,000 verdict in Dr. Lerner's favor and apportioned 40% of liability to Landlord and 60% to the Management Company, *i.e.*, $70,000 and $105,000, respectively.

Dr. Lerner and Appellees filed post-trial motions. Appellees' post-trial motion sought, *inter alia*, judgment notwithstanding the verdict in favor of Management Company, arguing that the jury erred as a matter of law in

finding Management Company liable when Management Company was not a party to the Lease and, therefore, could not have breached it.

Following oral argument, on October 28, 2022, the trial court entered an order reversing the judgment against Management Company and dismissing Dr. Lerner's complaint against it, finding that Management Company was not a party to the Lease. Since the jury verdict reflected a damage award against both Landlord and Management Company, the trial court ordered a new trial on damages against Landlord.

These cross-appeals followed. Dr. Lerner and Landlord each filed 1925(b) statements and in response, the trial court issued a 1925(a) opinion.

**A.**

**Landlord's Appeal**

Landlord raises the following three issues on appeal:

1. Whether the trial court erred in finding that [] Lerner carried her burden to establish the existence of a contract at trial[?]

2. Whether the trial court erred by ordering a new trial on damages when the jury already apportioned damages between [Landlord and Management Company?]

3. Whether the trial court erred by permitting [] Lerner at trial to collaterally attack the credibility determinations and legal conclusions of the Prior Action, *1500 Locust, LP v. Helen Lerner*, case no. 17080023[?]

Landlord's Brief at 26.

**I.**

In its first issue, Landlord asserts that the trial court erred in denying its motion for compulsory nonsuit and its post-trial motion because Dr. Lerner

failed to prove at trial the existence of the Lease between Landlord and Dr. Lerner.[3] *Id.* at 30. Landlord claims that Dr. Lerner never presented a full and complete copy of the Lease as part of her case in chief; rather she referred only to "cut-out portions of specific paragraphs flashed on the screen as part of her PowerPoint [presentation] without establishing any context or the fundamental existence of the Lease Contract from which these paragraphs were purportedly excised." *Id.* Landlord further claims that Dr. Lerner never authenticated the Lease, demonstrated that the parties had signed it, established the consideration given for it, or entered it into evidence. *Id.* Landlord avers that because Dr. Lerner failed to establish the existence of a contract between the parties, she could not prove that Landlord breached it. Thus, Landlord concludes that this Court should vacate the jury's verdict in Dr. Lerner's favor. *Id.* at 34.

Three elements are necessary to establish a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *412 N. Front St. Associates, LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa.

---

[3] A compulsory nonsuit is proper only "where it is clear that a cause of action has not been established[.]" *Billig v. Skvarla*, 853 A.2d 1042, 1048 (Pa. Super. 2004) (citation omitted); *McMillan v. Mountain Laurel Racing, Inc.*, 367 A.2d 1106, 1111 (Pa. Super. 1976). "The plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence. Any conflict in the evidence must be resolved in favor of the plaintiff." *Coatesville Contractors & Eng'rs, Inc. v. Borough of Ridley Park*, 506 A.2d 862, 865 (Pa. 1986) (citation omitted); *McMillan*, 367 A.2d at 1111.

Super. 2016). Such a showing must be made by a preponderance of the evidence. **Snyder v. Gravell**, 666 A.2d 341, 343 (Pa. Super. 1995).

We agree with the analysis of the trial judge that Dr. Lerner presented sufficient evidence, albeit barely, to establish the existence of the Lease and the relevant provisions. The Honorable Michael E. Erdos has authored a comprehensive, thorough, and well-reasoned opinion which identifies the evidence that establishes the existence of the Lease and the relevant provisions. **See** Trial Ct. Op. at 38-42. Since we agree with Judge Erdos' conclusion that Dr. Lerner presented sufficient evidence on this issue, we adopt as our own the portion of Judge Erdos' opinion that sets forth the evidence of the Lease and the relevant provisions. Landlord is, thus not entitled to relief on its claim that the trial court erred in denying its motion for compulsory nonsuit and its post-trial motion.

**II.**

In its second issue, Landlord avers that the trial court erred in vacating the jury's damages award and ordering a new trial on damages. Landlord's Brief at 34-46. Landlord claims that, after the court belatedly dismissed Management Company from the case, the trial court erred in not molding the verdict to $70,000 to reflect the jury's assessment of damages against Landlord. **Id.** at 34-35, 46. Landlord further argues that after the dismissal of the Management Company, two of the jury's "clearly manifested intentions" remained—that Landlord had breached the Lease and that Landlord was responsible for 40% of the $175,000 damages suffered by Dr. Lerner. **Id** at

35. It asserts that the trial court did not offer a legally sufficient explanation for its decision to disregard the "clearly expressed intent of the jury" that Landlord was only responsible for 40% of Dr. Lerner's damages. *Id.* at 40.

The decision to order a new trial is within the trial court's discretion and we review such an order for an abuse of that discretion. *Mazzie v. Lehigh Valley Hospital-Muhlenberg*, 257 A.3d 80, 89 (Pa. Super. 2021). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Mader v. Duquesne Light Co.*, 241 A.3d 600, 607 (Pa. 2020). "In determining whether the trial court abused its discretion in awarding a new trial, we must examine the underlying mistake and whether the reasons offered by the trial court in ordering a new trial based on this mistake constituted an abuse of discretion." *Mazzie*, 257 A.3d at 91.

In addition, we are mindful that a trial court may order a new trial limited to the issues of damages when: "(1) the issue of damages is not intertwined with the issue of liability; and (2) where the issue of liability has been fairly determined or is free from doubt." *Mader*, 241 A.3d at 614.

Here, the trial court explained that it erred as a matter of law when it misapplied the rules of contract law and denied Appellees' motion for summary judgment to dismiss the Management Company as a defendant. Trial Ct. Op. at 37. The trial court noted that as a result of this error, the case erroneously proceeded to the jury against both Landlord and the Management Company,

even though the Management Company was not a party to the Lease and thus, the Lease imposed no legal liability on the Management Company. Consequently, the jury's determination that the Management Company breached the Lease was legally indefensible. *Id.*

Moreover, and critically, the trial court highlighted that this error directly impacted the jury's verdict because the trial court instructed the jury to apportion liability between Landlord and the Management Company, an instruction that lacked any legal foundation. *Id.*

Following our review of the record, we agree with the trial court's coherent analysis and discern no abuse of discretion in the court ordering a new trial on damages. As an initial matter, the issue of damages is separate and distinct from the issue of liability, so we find no error in the trial court's refusal to grant a new trial on both liability and damages and only order a new trial on damages.

Additionally, we reject the Landlord's argument that the trial court erred in not molding verdict and reducing the damages award by the amount that jury imposed on the Management Company. Rather, in light of the fact that the jury determined that the Management Company breached the Lease and awarded damages based on that legally insufficient determination as well as the incorrect jury instruction, the portion of the jury verdict about damages is fatally flawed. Landlord's claim that the trial court erred in ordering a new trial on damages, thus, fails.

### III.

In its final issue, Landlord asserts, that if this Court affirms the trial court's decision to order a new trial, the trial should address both liability and damages, claiming that the trial court erred in not applying the principles of collateral estoppel and in permitting Dr. Lerner to challenge the credibility of certain witnesses whom the trial court in the Preliminary Injunction hearing had found credible. Landlord's Brief at 46-58. Landlord argues that because no party appealed the preliminary injunction and the plaintiffs in that case discontinued the action, the credibility determinations were "sufficiently firm and procedurally definite to warrant preclusive effect." *Id.* at 51-53. It further argues that the trial court erred in permitting Dr. Lerner to offer testimony that contested and contradicted testimony from, among others, David McMurtrie and Michael Lerario. *Id.* at 55.

Before we address the merits of this collateral estoppel claim, we consider whether Landlord has preserved it. In its Brief to this Court, Landlord has failed to indicate where in the record it preserved this issue for our review. Instead, Landlord has provided more than twenty citations to the Notes of Testimony referencing the testimony that it argues is precluded by the doctrine of collateral estoppel. *Id.* at 55-57. However, our review of each of these citations indicates that Landlord lodged objections in only seven of those instances and in none of those instances did Landlord assert that the

testimony was improper on collateral estoppel grounds.[4]  In the remaining instances, Landlord failed to raise any objection at all.  Landlord has, thus, waived this issue by not raising it before the trial court.  ***See Jones v. Ott***, 191 A.3d 782, 787 (Pa. 2018) ("In order to preserve an issue for appellate review, a litigant must place a timely, specific objection on the record.").

**B.**

**Dr. Lerner's Issues on Appeal**

Dr. Lerner purports to raise 43 issues on appeal.  Before we address the merits of the claims raised by Dr. Lerner, however, we consider whether she has preserved them for our review.

Pa.R.A.P. 1925(b)(4)(ii) requires an appellant to "**concisely** identify each error that [she] intends to assert with sufficient detail to identify the issue to be raised for the judge."  Pa.R.A.P. 1925(b)(4)(ii) (emphasis added).  "Issues not . . . raised in accordance with the provisions of this paragraph . . . are waived."  ***Id.*** at 1925(b)(4)(vii).  ***See also In re Estate of Daubert***, 757 A.2d 962, 963 (Pa. Super. 2000) ("[w]hen an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues."); ***see also Tucker v. R.M. Tours***, 939 A.2d 343, 346-47 (Pa. Super. 2007) (determining that a Rule 1925(b) statement that "consisted

---

[4] ***See*** N.T. Trial, 6/2/22, at 120, 151; N.T. Trial, 6/3/22, at 22-23, 103, 151-153; N.T. Trial, 6/6/22, at 5, 30.

of sixteen pages, with seventy-six paragraph statements, plus exhibits" was sufficiently vexatious to support a ruling that all issues were waived).

In its Rule 1925(a) opinion, the trial court observed that Lerner's 118-page Rule 1925(b) statement was "anything but concise." Trial Ct. Op. at 18. The court characterized it as "verbose, disorganized, and at times border[ing] on incomprehensible." *Id.* The court, therefore, found that Dr. Lerner had waived all issues raised in her Rule 1925(b) statement. We agree.

Similarly, Dr. Lerner's appellate brief contains substantial defects that preclude us from being able to meaningfully provide appellate review. Her 99-page *pro se* brief, in which, as noted above, she has raised 43 separate allegations of trial court error is similarly verbose and makes inaccurate and incomprehensible legal arguments and, thus, fails to comply with our Rules of Appellate Procedure. Notably, for example, the argument section of her brief, which begins with enumerated paragraph 88 and continues through paragraph 311, is not "divided into as many parts as there are questions to be argued" as required by Pa.R.A.P. 2119(a), and is disjointedly interspersed with statements of law, pertaining to irrelevant topics such as abuse of process, gross negligence, and temporary restraining orders, which are not issues in this breach of contract action.

"While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because she lacks legal training." ***Branch Banking and Trust v. Gesiorski***, 904 A.2d 939, 942 (Pa. Super. 2006) (citation omitted). "As our [S]upreme

- 13 -

[C]ourt has explained, any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing." ***Id.*** (citation omitted).

Simply, Dr. Lerner's failure to comply with our briefing requirements has precluded our ability to conduct meaningful appellate review. Thus, we dismiss her appeal. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); ***Branch Banking and Trust***, 904 A.2d at 942-43 (citation omitted) ("When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof."); Pa.R.A.P. 2101 (explaining that substantial briefing defects may result in dismissal of appeal).

**C.**

In sum, we affirm the trial court's order reversing the jury verdict against the Management Company and ordering a new trial on damages against Landlord. We dismiss Dr. Lerner's appeal.[5]

Appeal filed at Docket No. 3016 EDA 2022 is dismissed. Order appealed at Docket No. 3017 EDA 20223 is affirmed. Jurisdiction relinquished.

---

[5] We deny Dr. Lerner's February 2, 2024 Motion to Request to File Supplemental Brief.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/1/2024

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

HELEN B. LERNER, M.D.                      :        Case ID: 190702926

      v.                                        :

FIFTEEN HUNDRED LOCUST, LP and             :
BOZZUTO CORPORATION and                    :
SERVPRO CORPORATION                        :        No. 3016 EDA 2022

## <u>OPINION</u>

**ERDOS, J.**                                                      **APRIL 14, 2023**

Plaintiff Helen B. Lerner ("Appellant") appeared *pro se* before the Court and a jury on May 31, 2022, alleging that Defendants, Fifteen Hundred Locust, LP ("Fifteen Hundred") and Bozzuto Corporation ("Bozzuto") (collectively "Appellees") failed to perform adequate remediation for the flood damage to her apartment, and unlawfully displaced her by improperly filing for emergency injunctive relief in breach of the lease agreement ("Lease Contract"), resulting in damage and loss to her personal property. The jury entered a verdict on June 7, 2022 in favor of Appellant, awarding damages in the amount of $175,000.00. On June 17, 2022, both parties filed motions for post-trial relief. Briefs were submitted, and oral argument was heard on October 27, 2022. On October 28, 2022, the Court granted Appellees' motion for judgment notwithstanding the verdict in favor of Bozzuto and denied all other aspects of the post-trial motions. The Court reversed the judgment, dismissed Appellant's Complaint against Bozzuto, and ordered a new trial on the issue of damages against Fifteen Hundred. Subsequently, Appellant appealed the order, and a cross-appeal followed. For the reasons below, the Court respectfully requests that it be affirmed on appeal.



## PROCEDURAL POSTURE

At the heart of the instant action is a dispute between Appellant and her former landlord, Fifteen Hundred, and property manager, Bozzuto, stemming from a flood that occurred in her apartment on July 30, 2017. On August 7, 2017, Appellees filed a complaint in equity and sought emergency injunctive relief from Appellant's alleged obstruction of Fifteen Hundred's flood remediation efforts. On August 8, 2017, a hearing was held on the emergency preliminary injunction in front of Judge Daniel Anders. At the hearing, Appellees elicited testimony that Appellant had a cockroach infestation and excess possessions in her apartment and had obstructed their remediation efforts. Appellees' witnesses testified that Appellant was aggressive and hostile towards them and the employees of Servpro Corporation ("Servpro"), a company she hired to document the flood-damage to her personal property. They testified that she would not allow Servpro to remove her possessions from the apartment as further evidence of her alleged obstruction. Appellant, through counsel, cross-examined Appellees' witnesses at the hearing and presented evidence.

At the conclusion of the hearing, Judge Anders issued a preliminary injunction, requiring Appellant to remove herself and all her possessions from the apartment by August 9, 2017. He also added: "This Order shall remain in effect until the [apartment] has been properly remediated and rendered suitable for occupation, at which point this Order shall be rescinded." Judge Anders further noted on the record that Appellees' witnesses, Michael Lerario, William Green, and David McMurtrie, were credible. N.T. 08/08/2017, p. 62. On August 10, 2017, Appellees filed a praecipe notifying the Court that the underlying suit had been settled, discontinued, and ended.

On July 24, 2019, Appellant filed a Complaint against Appellees and Servpro for breach of contract, abuse of process, and other violations of law, originating from the flood, the inadequate

2

remediation, and Appellees' injunction. On August 19, 2019, Appellant amended her Complaint to add Servpro of Society Hill as a defendant.

In response, Appellees and Servpro filed preliminary objections. Appellant filed two motion for an extension of time to respond to both sets of preliminary objections, which were granted by Judge Arnold New on August 28, 2019, and October 4, 2019. Appellant filed another motion for an extension of time to respond to Servpro's preliminary objections, which was granted by Judge Daniel Anders on December 5, 2019. During this time, Judge New issued a Case Management Order, which ordered all discovery to be completed by June 1, 2020. 12/03/19 Case Management Order. The Order instructed Appellant to identify and submit curriculum vitae and expert reports of all expert witnesses she intended to testify at trial by June 1, 2020. Id. Appellees were given the same instruction, with an expert deadline of July 6, 2020. Id.

Appellant then filed an answer in opposition to both sets of preliminary objections. On January 24, 2020, Judge Anders sustained Appellees' and Servpro's preliminary objections to Appellant's Amended Complaint without prejudice. With respect to Appellees' preliminary objections, he further ordered Appellant to file an amended pleading within twenty-days. On February 24, 2020, Appellant filed a Second Amended Complaint. It asserted forty-five counts against Appellees and Servpro. On March 11, 2020, Servpro filed preliminary objections to the Second Amended Complaint. On March 13, 2020, Appellees did the same. Appellant did not file answers opposing either set of preliminary objections.

On May 19, 2020, Judge Anders entered two orders. The first sustained Servpro's preliminary objections and ordered that all of Appellant's claims against Servpro be dismissed with prejudice for failure to comply with Pa.R.C.P. 1019 and its mandate of conciseness. 05/19/20 Order Pursuant to Servpro's Preliminary Objections. The second sustained Appellees' preliminary

3

objections and dismissed all counts against them with prejudice except for Count I, Breach of Contract. Subsequently, Appellant filed several motions, including motions for extraordinary relief and reconsideration, which were denied by Judge Anders. On June 17, 2020, Appellant appealed Judge Anders' Orders entered on May 19, 2020, and on October 20, 2020 the Superior Court quashed the appeal and remanded it back to the lower court.

On July 8, 2021, a pretrial conference was held before Judge Linda Carpenter, who ordered the trial to commence on August 16, 2021. Judge Carpenter's Pretrial Order provided that both parties would be limited to calling individuals specifically identified by name and address in the pretrial memorandums. It also provided that both parties would be precluded from offering evidence through any person not listed in the pretrial memorandum unless good cause was shown, and that nothing in the order extended any previously imposed deadlines. However, on July 30, 2021, the matter was reassigned to the October 2021 trial pool, and was subsequently continued upon consideration of Appellant's ADA request and rescheduled for January 6, 2022. On October 31, 2021, Appellant filed a motion for the recusal of Judge Anders, which was denied on November 23, 2021, by Judge Carpenter.

In December of 2021, Appellant filed motions in limine, and Appellees re-filed the motions in limine they had originally filed after the pretrial conference with Judge Carpenter on July 28, 2021. Next, the matter was again rescheduled, this time to the May 2022 trial pool. On January 4, 2022, Judge Carpenter issued a Revised Case Management Order, which was the same as the original Case Management Order except for extensions of the pretrial motions date and the expected trial date. On February 7, 2022, Appellees filed a Motion for Summary Judgment to

dismiss Appellant's breach of contract claim.[1] On May 13, 2022, Servpro filed a Motion for Protective Order regarding documents requested by Appellant.

On May 23, 2022, the Court scheduled a hearing to discuss the Motion for Summary Judgment and the motions in limine. During the hearing, Appellant asked the Court to take judicial notice of a Philadelphia Inquirer article that discussed the impact of a past evictions on the ability to find new housing. The Court denied Appellants' request.

On May 26, 2022, the Court granted Appellees' motion to preclude Appellant from introducing testimony, evidence, opinion, or argument that would amount to expert testimony from her witnesses because the experts and their reports were produced after the June 1, 2020 discovery deadline. Additionally, the Court granted Appellees' motion to preclude Appellant from introducing testimony, evidence, opinion, or argument related to Freeman Auction House's appraisal document because it was also produced after the June 1, 2020 discovery deadline. The Court granted the motion without prejudice to allow Appellant to submit the appraisal document if she could lay a proper foundation at trial.

On May 31, 2022, trial commenced. During the trial, the Court granted in part and denied in part Appellees' Motion for Summary Judgement and granted Servpro's Motion for Protective Order except for evidence relevant to Appellant's breach of contract claim against Appellees. After ruling on Servpro's Motion for Protective Order, the Court ordered Servpro's former owner, Charles Doyle, to appear on June 2, 2022, to testify on behalf of Appellant and bring all documents directly related to the services they provided to her.

On June 7, 2022, the trial concluded with a jury verdict in Appellant's favor. The jury found that Appellant sustained $175,000 in damages due to Appellees' breach of the Lease

---

[1] In the Motion for Summary Judgment, Appellees argued that the motion should be granted for several reasons, including that Bozzuto was not a party to the Lease Contract between Appellant and Fifteen Hundred.

Contract. The jury apportioned liability between Appellees, assigning Fifteen Hundred forty percent of the liability, representing $70,000 of the total damages, and Bozzuto sixty percent of the liability, representing $105,000 of the total damages.

On June 17, 2022, both parties filed post-trial motions. Appellees' post-trial motion sought, in part, judgment notwithstanding the verdict in favor of Bozzuto, arguing that it was an error of law to find Bozzuto liable because they were not a party to the Lease Contract and, thus, could not have breached it. On August 5, 2022, both parties filed answers opposing the post-trial motions. On August 16, 2022, the Court issued two orders, inviting additional briefing on the following issue:

> If the Court finds that Defendant Bozzuto Corporation was not a party to the lease and thereby reverses the judgment against it, what would be the appropriate remedy with respect to the remaining parties?
>
> a. Enter a judgment of $70,000 against Defendant Fifteen Hundred Locust.
> b. Enter a judgment of $175,000 against Defendant Fifteen Hundred Locust.
> c. Order a new damages hearing with respect to Plaintiff and Defendant Fifteen Hundred Locust.
> d. Other.

The Court heard oral arguments on the post-trial motions on October 27, 2022. At this hearing, the Court ordered Appellees to provide an affidavit from their insurance company within thirty-days demonstrating that Fifteen Hundred had insurance coverage pertaining to this case. On October 28, 2022, the Court reversed the judgment against Bozzuto, dismissed Appellant's Complaint against Bozzuto, and ordered a new trial on the issue of damages against Fifteen Hundred. The Court denied all other aspects of the post-trial motions.

On November 18, 2022, Appellant filed a Motion for Continuance of thirty days to file a Motion for Reconsideration and Requested Judicial Consent for Interlocutory Appeal, and for a Stay of then Timely Filing of Initial Formal Notice of Interlocutory Appeal to the Superior Court.

6

On November 28, 2022, she filed a Petition for Permission of Interlocutory Appeal both as a matter of right as well as permissive appeal under Rule 341(c) and/or Rule 312, and/or Rule 313, as well as a stay of the lower court proceedings. The Court denied the Motion for Continuance and the Petition for Permission as moot on December 2, 2022.

Both parties filed appeals on November 28, 2022. On November 29, 2022, the Court ordered Appellant and Appellees to file Concise Statements of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Both parties timely filed their Statements of Matters Complained of on Appeal on December 20, 2022.

## FACTS

The instant action between Appellant and Appellees, her former landlord, Fifteen Hundred, and property manager, Bozzuto, stems from a flood in her apartment on July 30, 2017, and Appellees' suit against Appellant for her alleged obstruction of remediation. At trial, Appellant alleged that Appellees breached her Lease Contract by engaging in inadequate attempts to remediate the flood damage and filing an improper motion to remove her from the property based on false claims that she obstructed their remediation efforts. Based on Appellees' breach of the Lease Contract, Appellant alleged that she suffered damages in the form of lost and damaged personal property and unlawful displacement. Alternatively, Appellees claimed that they were not required to continue her Lease Contract because she purposefully gave up her right to have Appellees perform their obligations under the contract.

During her opening statement, Appellant presented via PowerPoint those provisions of the Lease Contract that Appellees had allegedly breached. N.T. 05/31/22, pp. 66-68. On direct examination, she testified that she received an email on July 30, 2017 from Appellees informing her that there had been a flood in her apartment. N.T. 05/31/22, p. 117. Instead of immediately

7

remediating her apartment, Appellees made differing excuses as to why they could not begin remediation and provided her with conflicting directives on how the remediation would be handled. N.T. 05/31/22, pp. 117-32. She stated that Appellees eventually informed her that she had to remove all her possessions from the apartment before they could remediate. N.T. 05/31/22, p. 125. As such, Appellees provided her with another apartment and offered her a storage facility while the remediation was being done. N.T. 05/31/22, pp. 125-27.

Appellant testified that while waiting for Appellees to begin remediation, she hired Servpro in an effort to be proactive and document the flood damaged to her apartment. N.T. 05/31/22, pp. 120-21; 125. Before their arrival, she attempted to expedite Servpro's photo documentation by laying her flood-damaged possessions on garbage bags in the communal hallway. N.T. 05/31/22, p. 125. When Servpro arrived on July 31, 2017, they informed her that they would not begin documentation until she signed a virtual contract. N.T. 05/31/22, p. 128. She testified to unknowingly signing the contract without realizing that the second page provided that Servpro was hired for the purpose of remediation. N.T. 05/31/22, pp. 128-30. Dissatisfied with Servpro's performance, she discharged them and did not pay them for their services. N.T. 05/31/22, p. 140; N.T. 06/01/22, p. 175.

According to Appellant, she then received a letter from Appellees' attorney on August 2, 2017, informing her that she had been obstructing Appellees' remediation efforts and that if she did not cooperate, they would take immediate action to remove her. N.T. 05/31/22, pp. 132-34. Perplexed and upset by the letter, she called Philadelphia's License and Inspection Office to apprise them of the ongoing situation and requested an officer be sent to look at the apartment. N.T. 05/31/22, pp. 134-35. License and Inspection Officer Valdamar Johnson came to the

apartment on August 3, 2017, and cited Appellees for the carpets not having been remediated. N.T. 05/31/22, pp. 134-37; Pltf's Second Amended Compl. at ¶ 295.

On August 7, 2017, Appellees sought emergency injunctive relief against Appellant for her alleged obstruction of their remediation efforts, and on August 8, 2107, a preliminary injunction hearing was held in front of Judge Anders. Appellant testified that she was unaware of the hearing until she checked her email the night before. N.T. 05/31/22, p. 155. She claimed that Appellees misled Judge Anders by testifying that she had a cockroach infestation and excess possessions in her apartment and that she had effectively obstructed all of Appellees' remediation efforts; Appellees used affidavits from Servpro to support their allegation that she would not allow Appellees or Servpro to remove her possessions from the apartment. N.T. 05/31/22, pp. 160-61. Judge Anders then entered a court order on August 8, 2017, requiring her to remove herself and her possessions from the apartment by the next day. N.T. 05/31/22, pp. 161-62.

Appellant testified that she then hired a small cleanout company because they were the only option available on such short notice. N.T. 05/31/22, pp. 163-64. However, because the company did not have the expertise of a traditional moving company, the employees broke and lost many of her possessions. N.T. 05/31/22, pp. 164-65. She explained that she was forced to take some of her possessions to the dump because she had nowhere to store them under the time constraint set forth in the court order. N.T. 05/31/22, pp. 164-65.

After all her possessions had been removed, David McMurtrie, general manager for Fifteen Hundred, inspected the apartment to make sure Appellant was fully moved out. N.T. 05/31/22, p. 168. She claimed that McMurtrie told her to come to his office, where he provided her with a form and demanded she return her keys for the remediation period. N.T. 05/31/22, p. 169. He told her

9

that the purpose of the form was to inform her that there would be a new lease upon her return and for her to provide a forwarding address for her security deposit. N.T. 05/31/22, p. 169.

She signed the form and told McMurtrie that she intended to return after remediation. N.T. 05/31/22, p. 168; 185. She continued to email Appellees to determine when she could move back in, and never returned her second key. N.T. 05/31/22, pp. 188-89. Eventually, she received an email from Appellees' attorney which stated that because the form she had signed was a lease termination form and because she had vacated the apartment, she would not be able to return even after remediation was complete. N.T. 05/31/22, p. 189. She claimed that McMurtrie had ultimately misled her into signing a lease termination form and that she was never permitted to move back into her apartment post-remediation. N.T. 05/31/22, pp. 181-82.

Appellant also testified about various provisions of the Lease Contract that Appellees had allegedly breached, while showing the jury those provisions on PowerPoint slides. For example, she testified about the following provisions:

33. RESPONSIBILITIES OF OWNER. We'll act with customary diligence to:
   (1) Keep common areas reasonably clean;
   (2) Maintain fixtures, furniture, hot water, heating, and A/C equipment;
   (3) Substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
   (4) Make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

39. MOVE-OUT NOTICE. Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:
   • We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in this Lease Contract. Oral move-out notice will not be accepted and will not terminate the Lease Contract.
   • Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our

10

representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

40. MOVE-OUT PROCEDURES. The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in re-renting charges. You're prohibited from applying any security deposit to rent. You won't stay beyond the day you are supposed to move out.

N.T. 05/31/22, pp. 178-82. Appellant claimed that Appellees' actions also breached the following Lease provisions: 4 ("Lease Term"), 12 ("Early Move-Out; Re-Renting Charges"), 43 ("Security Deposit Deductions and Other Charges") and 44 (Deposit Return Procedure and what constitutes a "Surrender" and "Abandonment" under the Lease Contract). N.T. 05/31/22, pp. 181-87; N.T 06/02/22, pp. 34-35.

Appellant's next witness was Arnold Berger, a former employer of the clean-out crew she had hired to move her possessions following the entry of the August 8, 2017 injunction. She showed Berger invoices she had paid him for dropping her possessions off at a city dump known as Covanta. N.T. 06/03/22, p. 136. Berger testified that the two invoices paid to Covanta were true and accurate. N.T. 06/03/22, pp. 137-38. The previous day, testimony was given by Byron Flamer and Iris Flamer, two former employees of Berger, who removed Appellant's possessions from her apartment. When presented with photo exhibits of possessions removed from Appellant's apartment that were ultimately either lost or damaged, both provided testimony on what items they remembered removing. N.T. 06/01/22, pp. 42-57; 82-86.

Appellant then retook the stand to continue her testimony with respect to damages and other expenses associated with her move. She testified that for every possession lost or damaged, she wrote the item down and conducted online research to investigate its worth. N.T. 06/01/22, p. 131. She also presented the jury with exhibits, via PowerPoint slides, of all the possessions that

11

were lost, damaged, or donated. N.T. 06/01/22, pp. 132-33. In addition to her possessions, she testified that she incurred the following damages: (1) move-out costs; (2) storage facility costs; (3) inability to obtain future housing; (4) un-refunded rent payments; and (5) unpaid security deposit. N.T. 06/01/22, pp. 131-32. During closing argument, Appellant also presented a summary of her damages and expenses via PowerPoint. N.T. 06/06/22, p. 204.

Appellant then called Michael Lerario, former property manager for Fifteen Hundred. He testified that he recognized provision 39 ("Move-Out Notice") and 40 ("Move-Out Procedures") from Appellant's Lease Contract. N.T. 06/03/22, pp. 120-26. He also stated that provision 39 contained boilerplate language that the tenant must give 60 days' written notice of termination or intent to move out as required by the Lease. N.T. 06/03/22, pp. 120-26. When Appellant asked whether he agreed that provision 12 ("Early Move-Out; Re-Renting Charges") of the Lease Contract contained an early move-out re-rental charge, Lerario testified that the provision was standard in the industry. N.T. 06/03/22, p. 127.

Appellant also called William Green, maintenance supervisor for Fifteen Hundred. When Appellant asked Green how she had obstructed Appellees' remediation efforts, he provided the following testimony:

> A.      Okay. Again, they're your items. Of course I don't want to throw your things away. That should be decided by you, the items that you no longer need because they're wet. Or destroyed or whatever. But I -- my staff was there to help you move these items. That's what we were there for. We had the storage space to place your items that you may want to still keep and have dry-cleaned or document. We also offered a guest suite to stay in and we also offered you a vacant apartment to put your dry items in. In other words, items that may not have needed to -- that weren't soaking wet, maybe like a bed frame or, you know, something like that. The reason that a lot of this had -- again, we were there to assist you in moving stuff, but we couldn't assist you any longer because you had stopped us from helping you.

N.T. 06/03/22, p. 170. On cross-examination, Green reiterated that she was uncooperative with Appellees remediations efforts. N.T. 06/03/22, pp. 207-08. He further testified that when he spoke

with Servpro about the possibility of assisting Appellant in the removal of her possessions so that Appellees could begin remediation, they refused to do so because they claimed she had been difficult to work with. N.T. 06/03/22, p. 202.

As her final witness, Appellant called David McMurtrie, Fifteen Hundred's general manager and the corporate representative for Appellees. On direct examination, he identified the Lease Contract between Appellant and Fifteen Hundred. N.T. 06/06/22, pp. 117-18. He further gave testimony that acknowledged the existence of the Lease Contract. N.T. 06/06/22, pp. 51-77; 138-39. For example, when Appellant asked why Appellees did not abide by provisions 39 ("Move-Out Notice"), 40 ("Move-Out Procedures"), 43 ("Security Deposit Deductions and Other Charges") and 44 (Deposit Return Procedure and what constitutes a "Surrender" and "Abandonment") of her Lease Contract, McMurtrie testified that Appellees did not need to honor those obligations because she had already violated the terms of the Lease and terminated it by signing the lease termination form. N.T. 06/06/22, pp. 51-52.

On cross-examination, McMurtrie also testified that Bozzuto's relationship with Fifteen Hundred was laid out in a separate contract, the Management and Leasing Agreement, and that under the Agreement Bozzuto was not listed as a party to the Lease Contract. N.T. 06/06/22, p. 89; 118; Exhibit List. The terms of the Agreement provided that Bozzuto was a property manager for the apartment and signed the Lease Contract as an agent of Fifteen Hundred. Exhibit List. McMurtrie then read in provision 35 of the Lease Contract, entitled "Miscellaneous":

> A.     'Neither we nor any of our representatives have made any' -- I don't have my glasses, so it's kind of tough -- 'have made any oral promises, representations, or agreements. This lease contract is the entire agreement between you and us. Our representatives including management personnel, employees and agents have no authority to waive, amend, or terminate this lease contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.'

13

N.T. 06/06/22, pp. 123-24. He further testified that the Lease Contract was signed on March 16, 2017 by Appellant and Bozzuto, acting as a representative on behalf of Fifteen Hundred. N.T. 06/06/22, p. 90; 129.

Additionally, McMurtrie explained that Appellant had obstructed Appellees' attempts at remediation. N.T. 06/06/22, pp. 95-97. When asked whether Appellees would have initiated the preliminary injunction action if she had cooperated with their remediation efforts, McMurtrie stated that they would not have. N.T. 06/06/22, p. 98. He claimed that she was in breach of her obligations under the Lease Contract for her obstruction of their remediation efforts:

> A.     'Resident must permit access to the leased premises to allow necessary repairs or maintenance. Resident must promptly report a need for extermination or repairs and maintenance. Resident must keep the leased premises in a clean and sanitary condition. Resident must dispose of trash on at least a weekly basis. Resident may not take any action that increases the risk of fire or hazards at the property. Resident must use the hallways only for entry and exit. Resident may not interfere with the rights, health, safety and enjoyment of other residents. Resident may not harass or interfere with the usual business of the landlord. Resident must use diligence in maintaining the leased premises in a good condition and not cause damages; and resident must comply with the mold addendum and take all steps to avoid mold growth.'

N.T. 06/06/22, pp. 101-02. As such, Appellees were not required to perform their obligations under the Lease Contract because she effectively obstructed their remediations efforts in breach of the lease.

After McMurtrie's testimony, both parties rested. Appellees made a motion for a directed verdict, arguing that Appellant failed to establish the existence of a contract. N.T. 06/06/22, p. 152. The Court denied the motion. N.T. 06/06/22, p. 153.

After closing arguments, the Court instructed the jury on the law and informed them that they would be getting a verdict sheet with the following questions for review:

> You will be getting a verdict sheet that has four questions for your review. The first will ask you whether 1500 Locust breached the lease agreement. The second question will ask you whether Bozzuto Corporation breached the lease agreement. . . If you find that both of

14

them did, I will be asking you to apportion liability. In other words, was it 50/50, 90/10, 99/1. That's for you to decide. If you find that at least one of them did, you will go on to the issue of damages, and I will give you some guidance on these terms.

N.T. 06/06/22, pp. 230-36. The Court then instructed the jury that a contract is a legally enforceable agreement between two or more parties if each party intended to exchange something of value. N.T. 06/06/22, p. 236. The Court further instructed the jury on breach of contract, breach of implied warranty of habitability, breach of the implied warranty of quiet enjoyment, and damages. N.T. 06/06/22, pp. 230-44. The Court also provided an instruction on Appellees' claim that they were not required to continue the Lease Contract after August 9, 2017 because Appellant gave up her rights to have them perform their obligations. N.T. 06/06/22, pp. 239-40.

During deliberations, the jury requested to review Appellant's itemized damages. N.T. 06/07/22, p. 17. She provided the Court with a hard copy of her itemized damages. N.T. 06/07/22, pp. 32-41. Appellees objected to the document, arguing that it was not the same itemized damages she had presented in her PowerPoint slide to the jury, and that it included already precluded evidence. N.T. 06/07/22, pp. 32-41. Appellant then presented the Court with a copy of the itemized damages directly from her PowerPoint slide, which Appellees also objected to due to multiple errors. N.T. 06/07/22, pp. 32-41. She argued that while there were numerical errors, it was not done purposefully. N.T. 06/07/22, p. 34. The Court sustained Appellees' objections and told the jury to rely on their recollection. N.T. 06/07/22, p. 56.

## ISSUES ON APPEAL

Appellant raises the following issues on appeal, which have been consolidated for clarity:

I.   The Court erred by granting Appellees' motion for a judgment notwithstanding the verdict in favor of Bozzuto and ordering a new trial on damages.

II.  The Court erred by engaging in improper judicial bias.

15

III. The Court erred by refusing to give the jury a copy of her purported itemized damages.

IV. The Court erred by denying Appellant certain discovery and preventing her from conducting discovery for counts that were dismissed from her Second Amended Complaint.

V. The Court erred by failing to comply with Pennsylvania's Supreme Court directives for COVID-19 and providing COVID-19 training only to lawyers.

VI. The Court erred by prematurely sustaining Servpro's preliminary objections and Appellees' preliminary objection with respect to tortious interference.

VII. The Court erred by not enforcing its own subpoena regarding Servpro.

VIII. The Court erred by not allowing Appellant to lead individual voir dire.

IX. The Court erred by refusing to take judicial notice of an article by the Philadelphia Inquirer.

X. The Court erred by not honoring Appellant's disability accommodations formally requested prior to trial.

XI. The Court erred by failing to instruct the jury on the collateral source rule.

XII. The Court erred by ordering Appellees to provide only an affidavit of insurance coverage within thirty days of the posttrial motion hearing on October 27, 2022, resulting in Appellant not timely having Appellees' insurance policy.

XIII. The Court erred by ordering a new trial on damages that put Appellant's abuse of process claim out of court.

XIV. The Court erred by denying Appellant's motion for leave to amend her Second Amended Complaint to add a count for constructive eviction.

XV. The Court erred by not requiring corporate executive witnesses Doreen Trongone and Ted Bozzuto to testify at trial.

16

XVI.     The Court erred by engaging in an in-camera review of redacted documents that Appellees alleged were covered by attorney-client privilege.

XVII.    The Court erred by failing to give a corrective jury instruction for Appellees' closing argument with respect to the date on which Appellees got notice of the Department of Licenses and Inspections' Initial Notice of Violation and Order.

XVIII.   The Court erred by failing to give a corrective instruction for Appellees' closing argument which did not properly characterize the form of relief Appellees requested in the underlying injunction case.

Appellees raise the following issues on cross-appeal:

I.       The Court erred by ordering a new trial on the issue of damages following its grant of Appellees' post-trial motion for JNOV in favor of Bozzuto.

II.      The Court erred by denying Appellees' post-trial motion with respect to Appellant's failure to establish the existence of the Lease Contract for her breach of contract claim.

III.     The Court erred by permitting Appellant to present claims for breach of implied warranty of habitability and quiet enjoyment.

IV.      The Court erred by permitting Appellant to collaterally attack the credibility determinations and legal conclusions made by a different judge in the injunction matter.

## DISCUSSION

Under the Pennsylvania Rules of Appellate Procedure, a 1925(b) Statement of Matters Complained of On Appeal "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge" and any issues not included in the statement or not raised in accordance with 1925(b)(4) are waived on appeal. Pa.R.A.P. 1925(b)(4)(ii), (vii). Indeed, "[w]hen an appellant fails to adequately identify in a concise manner

17

the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." In re Estate of Daubert, 757 A.2d 962, 963 (Pa.Super. 2000). Further, "when an appellant fails to identify in a vague Pa.R.A.P. 1925(b) statement the specific issue he/she wants to raise on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in its Pa.R.A.P. 1925(a) opinion." Com. v. Lemon, 804 A.2d 34, 38 (Pa.Super. 2002).

While Appellant timely filed her 1925(b) Statement, at 118 pages it is anything but concise. It was verbose, disorganized, and at times bordered on incomprehensible. Accordingly, Appellant has waived all issues raised in her 1925(b) Statement, and her appeal may be denied on this basis alone. Nevertheless, the Court will address the merits of the issues raised in her 1925(b) Statement to the extent she has properly sought post-trial relief in accordance with Pa.R.C.P. 227.1. Bd. of Supervisors v. Main Line Gardens, Inc., 155 A.3d 39, 44 (Pa. 2017) (pursuant to Pa.R.C.P. 227.1 parties must file post-trial motions to preserve issues for appeal, and if an issue has not been raised in a post-trial motion, it is waived for appeal purposes.). Many of the issues in Appellant's 1925(b) statement were not included in her post-trial motion.[2] For this reason, those issues are waived for purposes of appellate review will not be further addressed in this opinion.

---

[2] These issues are:
  (1) The Court erred by ordering Appellees to provide only an affidavit of insurance coverage within thirty-days of the post-trial motion hearing on October 27, 2022, resulting in Appellant not timely having Appellees' insurance policy.
  (2) The Court erred by granting Appellees' motion for a judgment notwithstanding the verdict in favor of Bozzuto and order a new trial on damages in violation of the General Verdict Rule.
  (3) The Court erred by ordering a new trial on damages that put Appellant's abuse of process claim out of court.
  (4) The Court erred by denying Appellant's motion for leave to amend her Second Amended Complaint to add a count for constructive eviction.
  (5) The Court erred by not requiring corporate executive witnesses Doreen Trongone and Ted Bozzuto to testify at trial.
  (6) The Court erred by engaging in an in-camera review of redacted documents that Appellees alleged were covered by attorney-client privilege.

18

<u>**Discussion of Appellant's Claims**</u>

## I.   BOZZUTO WAS ENTITLED TO JNOV AS A MATTER OF LAW.

In response to a motion for post-trial relief, the trial court may, where appropriate, grant a new trial as to all or any of the issues in the case or direct the entry of judgment in favor of any party. Pa.R.C.P. 227.1(a). Whether to grant a motion for JNOV is within the trial court's sound discretion. <u>See</u> <u>Campisi v. Acme Markets, Inc.</u>, 915 A.2d 117, 119 (Pa.Super. 2006). Such a motion can only be entered "if the movant is entitled to judgment as a matter of law or if evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." <u>Land v. The Salvation Army</u>, 783 A.2d 775, 777 (Pa.Super. 2001) (<u>citing Moure v. Raeuchle</u>, 604 A.2d 1003, 1007 (Pa. 1992)). When deciding a motion for JNOV, the trial court must consider the evidence "in the light most favorable to the verdict winner, and [they] must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in [their] favor." <u>Broxie v. Household Finance Company</u>, 372 A.2d 741, 745 (Pa. 1977).

Appellant asserts that the Court abused its discretion by invading the province of the jury. The principles of contract law control a lease agreement. <u>Fleetway Leasing Co. v. Wright</u>, 697 A.2d 1000, 1004 (Pa.Super. 1997). When a contract's language is clear and unambiguous, its meaning, including the rights and duties of the parties, is determined by examining the contract. <u>Little v. Little</u>, 657 A.2d 12, 15 (Pa.Super. 1995); <u>Walton v. Philadelphia National Bank</u>, 545 A.2d

---

(7) The Court erred by failing to give a corrective jury instruction for Appellees' closing argument with respect to the date on which Appellees got notice of the Department of Licenses and Inspections' Initial Notice of Violation and Order.

(8) The Court erred by failing to give a corrective instruction for Appellees' closing argument which did not properly characterize the form of relief Appellees requested in the underlying injunction case.

19

1383, 1388 (Pa.Super. 1988). Further, one cannot be liable for a breach of contract if they are not a party to that contract. Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. 1991).

Here, the Lease Contract is the operative lease agreement, and it clearly and unambiguously states: "This Lease Contract is between you, the resident(s) (list all people signing the Lease Contract): Helen Lerner and us, the owner, 1500 Locust, LP." See Exhibit List; see N.T. 06/06/22, p. 130. Notably, the Lease Contact also provides: "No employee, agent, or *management company* is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our [Fifteen Hundred's] behalf." Id (emphasis added). Bozzuto's relationship with Fifteen Hundred was laid out in a separate contract, the Agreement. N.T. 06/06/22, p. 89; Dfts' Post-trial Mot. Ex. M; Exhibit List. Per the terms of the Agreement, Bozzuto is Fifteen Hundred's property manager for the apartment and signed the Lease Contract merely as an agent of Fifteen Hundred, not as a party to the contract. N.T. 06/06/22, pp. 129-130; Dfts' Post-trial Mot. Ex. M; Exhibit List. Therefore, the JNOV was appropriate.

In addition, contrary to Appellant's contention, Judge Anders' May 19, 2020 Order did not preclude a finding by the Court that Bozzuto was not a party to the contract. "[T]he coordinate jurisdiction rule, [] generally prohibits a judge from altering the resolution of legal questions previously decided by another judge of coordinate jurisdiction." Rellick-Smith v. Rellick, 261 A.3d 506, 510 (Pa. 2021). Appellant contends that the Court violated the coordinate jurisdiction rule by granting Appellees' motion for JNOV in favor of Bozzuto. She asserts that the Court's dismissal of Bozzuto contradicts Judge Anders' Order entered on May 19, 2020, dealing with Appellees' preliminary objections. She argues that this is so because Judge Anders determined that Bozzuto was a proper defendant for the breach of contract claim.

20

Appellant's claim is incorrect and does not accurately reflect the record. The JNOV in favor of Bozzuto does not contradict or alter a previously resolved legal question by another judge. The Order issued by Judge Anders did not decide whether Bozzuto was or was not a proper defendant. Appellees' preliminary objections in response to her Second Amended Complaint simply did not discuss the propriety of Bozzuto as a defendant. Accordingly, the Court did not violate the coordinate jurisdiction rule because there was never a legal determination made with respect to Bozzuto's status as a party to the Lease Contract.

## II. APPELLANT WAIVED HER IMPROPER JUDICIAL BIAS ISSUE BECAUSE SHE DID NOT OBJECT AT THE EARLIEST POSSIBLE MOMENT.

Appellant states that Judge Anders erred by engaging in improper judicial bias, arguing that he should have recused himself from ruling on Appellees' and Servpro's preliminary objections because he had previously presided over the injunction matter. "[A] party seeking recusal or disqualification of a judge is required to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." In re Lokuta, 11 A.3d 427, 437 (Pa. 2011) (citing Goodheart v. Casey, 565 A.2d 757, 763 (Pa. 1989)); see also Lomas v. Kravitz, 170 A.3d 380, 390 (Pa. 2017) ("party must seek recusal of a jurist at the earliest possible moment, i.e., when the party knows of the facts that form the basis for a motion to recuse.").

The docket reflects that Appellant did not raise her objection at the earliest possible moment; instead, she waited until October 31, 2021, to file her motion for recusal, even though Judge Anders first entered an order on December 5, 2019. After December 5, 2019, Judge Anders continued to enter pretrial orders and appeared on the docket several times before she filed her motion for recusal on October 31, 2021. Appellant did not express any dissatisfaction with Judge Anders' until he sustained Appellees' and Servpro's preliminary objections with prejudice and denied her motions for reconsideration. See Jordan v. Pennsylvania State Univ., 276 A.3d 751,

21

762 (Pa.Super. 2022) ("The timeliness of such an application [for recusal or disqualification of a judge based on judicial bias] is particularly troubling where a party seeks disqualification only after receiving adverse judgment."). Thus, Appellant's objection is waived.

## III. APPELLANT'S ITEMIZED DAMAGES CONTAINED ERRORS AND WERE INCONSISTENT WITH THE ACTUAL EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.

Appellant contends that the Court erred by refusing to either give the jury a copy of her purported itemized damages list or allow them to review the actual PowerPoint slides presented during her testimony. It is well-established that "[t]he general rule in Pennsylvania is that exhibits properly admitted into evidence, with the exception of depositions and transcripts of testimony, may, within the discretion of the trial court, be sent out with the jury." Kearns v. Clark, 493 A.2d 1358, 1362 (Pa.Super. 1985) (citing Wilson v. Pennsylvania Railroad Co., 219 A.2d 666, 674 (Pa. 1966)); see also Pa.R.C.P. 223.1(d)(3). It is also within the trial court's discretion to refuse the jury's request to see exhibits where they can mislead or confuse the jury. King v. Stefenelli, 862 A.2d 666, 675 (Pa.Super. 2004) (no abuse of discretion when the trial judge refused to send out portions of medical records that could have been misinterpreted by jury.).

Upon receiving the jury's request to see her property damages, Appellant provided the Court with a hard copy of the itemized damages that did not accurately reflect the PowerPoint slides shown to the jury: The hard copy included the already-precluded appraisal document by Freeman Auction House. N.T. 06/07/22, pp. 39-40. Moreover, the itemized damages shown to the jury during Appellant's testimony via the PowerPoint slides contained several numerical errors. N.T. 06/07/22, pp. 32-37. While her mistakes may not have been purposeful, the Court was rightly concerned that Appellant's itemized damages could confuse the jury even with sanitization.[3]

---

[3] In addition, the Court was concerned that some of the itemized damages presented in Appellant's PowerPoint slides were derived from expert opinions which were previously precluded.

Accordingly, it did not abuse its discretion by refusing to give the jury Appellant's itemized damages.

## IV. DISCOVERY

Appellant asserts that the Court erred regarding discovery. Specifically, she contends that she was prejudicially denied proper discovery in the following manners: (1) Judge Carpenter's Revised Case Management Order did not consider COVID-19 and retroactively altered the discovery deadline; (2) the Court improperly excluded her expert witnesses reports and testimony at trial; and (3) the Court did not permit her to introduce an appraisal document by Freeman Auction House.

### a. The Case Management Order was Proper and Accurately Reflected Court- Issued COVID-19 Directives.

First, Appellant contends that Judge Carpenter's Revised Case Management Order included an *ex post facto* discovery deadline which did not consider the impact of COVID-19 on medical professionals. In support of her contention, she cites President Judge Idee Fox's Administrative Order No. 29. Appellant argues that the Administrative Order acknowledged COVID-19 and provided leniency with respect to court deadlines for medical personnel. Accordingly, Appellant asserts that as a medical professional engaged in helping to manage the pandemic, she was prejudicially denied proper discovery because of the revised discovery deadline.

Appellant's recitation of the facts is inaccurate. The discovery deadline was laid out in the initial Case Management Order issued by Judge New, which was provided to Appellant on December 3, 2019, before the pandemic. Additionally, the Revised Case Management Order, entered on January 4, 2022 by Judge Carpenter, largely provided the same information as the original order, altering only the deadline for pretrial motions and the expected trial date. As such,

Appellant knew the discovery deadlines at the outset of the trial and cannot in good faith claim that Judge Carpenter's Revised Case Management Order retroactively altered the deadline for discovery.

Further, Appellant's interpretation of Administrative Order No. 29 is also inaccurate. While Administrative Order No. 29 acknowledged the health crisis created by COVID-19, it directed the following:

> To the extent practicable parties shall engage in discovery consistent with governing scheduling orders. . . No party shall use the current health crisis for advantage in the discovery process.
>
> . . .
>
> Depositions of and required appearances for doctors, nurses, or other healthcare professional who are substantially involved in responding to the COVID-19 public health crisis are suspended.

Administrative Order No. 29 of 2020, 04/08/2020. The Administrative Order made clear that parties are required to adhere to scheduling orders and may not use COVID-19 as an excuse to flout discovery. Furthermore, while the Order exempted certain medical professionals from being compelled to attend depositions and court, it did not mandate alteration of discovery deadlines. Therefore, Judge Carpenter did not abuse her discretion or commit an error of law concerning the Revised Case Management Order.

### b. Appellant's Untimely-Disclosed Expert Reports Did Not Comply with The Case Management Order and Prejudiced Appellees.

If a litigant fails to comply with a discovery order, the trial court may properly preclude such discovery upon the motion of an aggrieved party. Pa.R.C.P. 4019. Additionally, when an expert is not disclosed during discovery, the undisclosed expert will not be permitted to testify at trial, except under extenuating circumstances. Pa.R.C.P. No. 4003.5(b). As such, it is largely within the trial court's discretion to exclude expert witness testimony for a party's failure to

comply with discovery deadlines. <u>Williams v. Southeastern Pa. Tran. Auth.</u>, 741 A.2d 848, 855 (Pa.Cmwlth. 1999).

Nonetheless, the preclusion of an expert witness is a drastic sanction, and it should be done only where the facts of the case make it necessary. <u>Jacobs v. Chatwani</u>, 922 A.2d 950, 962 (Pa.Super. 2007). Thus, the trial court should consider the following when determining whether to preclude expert testimony for failure to comply with court deadlines: (1) the prejudice to the parties; (2) the ability of that party to cure the prejudice; (3) the extent to which the case would be disrupted by waiver of the rule against calling unlisted witnesses; and (4) the defaulting party's willfulness or bad faith. <u>Smith v. Grab</u>, 705 A.2d 894, 902 (Pa.Super. 1997).

Appellant contends that the Court abused its discretion by granting Appellees' motion in limine to preclude her from introducing testimony, evidence, opinion, or argument that would amount to expert testimony from specific individuals. The Court disagrees, because sufficient prejudice to Appellees existed to warrant the preclusion of Appellant's expert testimony and reports.

Judge Carpenter unambiguously stated at the pretrial conference on July 8, 2021 that any experts who had not been disclosed by the June 1, 2020 deadline, which had been specified in the initial Case Management Order, would be prohibited from testifying. This was only fair, given that Appellant had not yet disclosed a single expert and the trial at that point was scheduled for August 16, 2021, only several weeks away. Appellant did not disclose her experts to Appellees until July 8, 2021, and waited until July 10, 2021 to disclose their reports, prompting Appellees to timely file a motion in limine to preclude these witnesses.

Due to her untimely disclosures, Appellees were prejudiced by not being able to prepare rebuttal expert testimony. While an untimely disclosure of an expert may not be prejudicial where

a party still has time to investigate an expert before trial, <u>Kemp v. Qualls,</u> 473 A.2d 1369, 1374 (Pa.Super. 1984), here, Appellant had disclosed upwards of ten expert reports more than a year after the close of discovery and weeks before the scheduled trial. While there were several subsequent postponements of the trial, most of these were of short duration.[4]

### c. The Freeman Auction House Appraisal Document Was Produced After the Discovery Deadline, Was Not Authenticated, and Was Not Otherwise Admissible.

Next, Appellant argues that the Court erred by not admitting her appraisal document by Freeman Auction House into evidence. She contends that the appraisal document should have been allowed at trial under the business record exception. The general rule for authenticating evidence is as follows: "Unless stipulated to, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa. R.E. 901(a). Even if an item containing hearsay is properly authenticated, it must still be admissible under the Rules of Evidence.

Here, Appellant was precluded from introducing the appraisal document because it was produced on November 2, 2021, significantly after the June 1, 2020, discovery deadline. <u>See</u> Dfts' <u>Motion in Limine to Preclude Freeman Auction House</u>. She was further precluded from admitting the appraisal document because she did not produce a witness who could properly authenticate it. Finally, the appraisal document by Freeman Auction House would not fall under the business record hearsay exception because it was not created in the regular course of business but rather was created for litigation. <u>See</u> 42 Pa.C.S.A. § 6108(b). Thus, the Court did not abuse its discretion by precluding the appraisal document.

---

[4] As with the other motions in limine in this case, this motion was not addressed until the time the trial actually went forward. While Appellees had no reason to know that the trial would keep getting postponed, it might have been better had they at some junction fashioned their request as a motion for a discovery sanction, which might have gotten the matter before a judge (via Discovery Court) much sooner and given both sides earlier clarity on this issue. Arguably, the period between the final continuance in January 2022 and the trial in May 2022 afforded Appellees sufficient time to prepare expert rebuttal or at least ask anew for a ruling on its outstanding motion in limine.

## V.  IMPACT OF COVID-19

Appellant asserts numerous issues stemming from the Court's actions and/or directives with respect to COVID-19. Given the overlap and repetition, the Court has re-summarized the issues. Appellant contends that the Court erred by: (1) not complying with court-prescribed COVID-19 directives, including President Judge Fox's Administrative Orders and the protocols and guidelines published by the First Judicial District; and (2) only providing attorneys access to the Philadelphia Bar Association's training sessions on the court filing procedure during COVID-19, as opposed to all persons with business before the court. As a result, Appellant argues that she was prejudiced in presenting her case at trial.

### a.  The Court Complied with All COVID-19 Directives, Protocols, and Guidelines.

Appellant's first issue encompasses four sub-issues. First, she contends that President Judge Fox's Administrative Order No. 29 provided medical personnel during COVID-19 greater leniency with respect to court deadlines. Considering Order No. 29, Appellant argues that the two Orders entered on May 19, 2020 by Judge Anders, which dismissed all counts except breach of contract, were premature and deprived her of her right to file responses to Appellees' and Servpro's preliminary objections. Second, she contends that the May 19, 2020 Orders were also premature because Administrative Order No. 31 set a filing deadline of June 1, 2020, and thus Appellant had until then to file replies before the Court entered its orders related to the preliminary objections.

Third, Appellant argues that she was prejudiced by the Court not enforcing a paperless trial as prescribed in the First Judicial District's "Protocols and Guidelines for Conducting In–Person Civil Jury Trials in City Hall During the COVID-19 Pandemic." For the last issue, she argues that the Court's denial of Officer Johnson's testimony via Zoom did not comply with the provisions of

27

the Pennsylvania's Supreme Court's Emergency Declaration for COVID-19, and she was thereby prejudiced by not being able to present a key, neutral government witness.

In an order on March 16, 2020, the Pennsylvania Supreme Court declared a general, statewide judicial emergency until April 14, 2020 on account of COVID-19. The order granted President Judges in each judicial district the authority to "suspend time calculations for the purposes of time computation relevant to court cases. . . as well as time deadlines []." Additionally, it provided president judges with authority to: "[a]uthorize additional uses of advanced communications technology to conduct court proceedings. . .; and [t]ake any action permitted pursuant to Rule of Judicial Administration 1952(B)(2) . . .".

Accordingly, President Judge Fox issued Administrative Orders No. 29 and No. 31. Administrative Order No. 29 provided that "[a]ny legal papers or pleadings required to be filed between March 17, 2020, and April 6, 2020, will be deemed to have been timely filed if filed by April 13, 2020." Administrative Order No. 31 stayed the issuance, execution, and enforcement of residential writs of possession issued by the Court's Office of Judicial Records until June 1, 2020.

President Judge Fox also issued Administrative Order No. 24, which provided that civil jury trials will continue to be in person "subject to the Court's protocols published on the Court's website and entitled, 'Resumption of In-Person Jury Trials During the COVID-19 Judicial Emergency.'" The protocols and guidelines published by the First Judicial District of Pennsylvania provides, in relevant part: "[T]estimony must be presented in-person except as otherwise permitted by the Pennsylvania Rules of Civil Procedure or Rules of Evidence. In other words, counsel may not present any witness by advanced communication technology such as through Zoom." Protocols and Guidelines for Conducting In–Person Civil Jury Trials in City Hall During the COVID-19 Pandemic 01/05/2022, at 2(d)(2).

Concerning issues one and two, Appellees and Servpro filed preliminary objections to Appellant's Second Amended Complaint on March 11, 2020, and March 13, 2020, with responses due on March 31, 2020, and April 4, 2020. However, Appellant was given until April 13, 2020, to file responses because of Administrative Order No. 29. Appellant did not file responses to preliminary objections within this timeframe. Nor did she file responses in the time between April 13, 2020 and May 19, 2020, when the preliminary objections were ultimately ruled upon. Appellant was not denied the opportunity to file responses to the preliminary objections; she deprived herself of that right. Similarly, Administrative Order No. 31 is not applicable because it only applies to residential possession writs.

Regarding the third issue, the protocols and guidelines published by the First Judicial District provide, in relevant part: "Counsel must display all documents and other evidence on a television or projection screen unless otherwise permitted by the presiding trial judge. If paper documents are permitted by the presiding trial judge, counsel shall ensure that there are sufficient copies for each person in the room to review including jurors, other counsel, witnesses and the presiding trial judge." Id at 2(d)(3). As of January 5, 2022, Judges could permit paper documents during jury trials. Any prejudice she suffered stemmed from Appellant's failure to request the Court for permission to use paper documents at trial.

Finally, contrary to Appellant's interpretation of the Pennsylvania Supreme Court's COVID-19 directive, the First Judicial District's protocols and guidelines specified that witnesses cannot testify via Zoom. Accordingly, the Court's refusal to let Officer Johnson testify live via Zoom was proper. Nor was Appellant prejudiced by this decision: Appellant was given the opportunity to procure Officer Johnson's testimony through a trial deposition but decided against doing so. Any prejudice suffered rests squarely on Appellant's shoulders.

29

### b. Court-Provided COVID-19 Training to Attorneys Did Not Prejudice Appellant.

With respect to Appellant's assertion that she was prejudiced by the Court only providing attorneys with access to the Philadelphia Bar Association's training related to COVID-19, Appellant has failed to explain how she was prejudiced. The jury verdict regarding the breach of contract claim was not impacted by the training in question. Moreover, since 2009, parties have been able to file all legal papers electronically, including motions for extensions of time. See Phila. Civ. R. 205.4(a), (c)(2). Nothing prevented Appellant from filing for an extension of discovery deadlines through the Court's electronic filing system.

## VI. APPELLANT'S COMPLAINTS DID NOT CLEARLY APPRISE SERVPRO WITH MATERIAL FACTS SUFFICIENT TO ENABLE THEM TO PREPARE A CASE, AND NO RECOVERY WAS POSSIBLE FOR THE TORTIOUS INTERFERENCE CLAIM AGAINST APPELLEES BASED ON THE FACTS AVERRED.

The standard of review on appeal from a trial court's decision to sustain or overrule preliminary objections is to determine whether the court committed an error of law. Feingold v. Hendrzak, 15 A.3d 937, 941 (Pa.Super. 2011). The Pennsylvania Rules of Civil Procedure allow for preliminary objections based on the legal insufficiency of a pleading (demurrer). Pa.R.C.P. 1028(a)(4); see also Cooper v. Church of St. Benedict, 954 A.2d 1216, 1218 (Pa.Super. 2008). The Court must "resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues. . ." Mellon Bank, N.A. v. Fabinyi, 650 A.2d 895, 899 (Pa.Super. 1994).

When considering such preliminary objections, "all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." Haun v. Community Health Systems, Inc., 14 A.3d 120, 123 (Pa.Super. 2011). Any doubts as to whether a demurrer should be granted should be resolved in favor of overruling the preliminary objection. Juszczyszvn v. Taiwo, 113 A.3d 853, 856-57 (Pa.Super. 2015). Further,

these facts must be set forth in a concise and summary form. Pa.R.C.P. 1019(a). The purpose of Pa.R.C.P. 1019 is to require the pleader to disclose the material facts sufficient to enable the adverse party to prepare his case. Donaldson v. Davidson Bros., Inc., 144 A.3d 93, 104 (Pa. Super. 2016).

First, Appellant contends that Judge Anders prematurely dismissed Servpro on preliminary objections. As such, she argues that she was denied a full exploration of the central issues of her case at trial because of Servpro's dismissal from the case. However, Judge Anders did not commit an error of law when he sustained Servpro's preliminary objections and dismissed them as a defendant because she failed to comply with Pa.R.C.P. 1019(a). Appellant had the opportunity to amend her complaints to produce a proper pleading in concise form as required by Pa.R.C.P. 1019(a). Regardless, her Second Amended Complaint listed forty-five counts under various theories of liability and was verbose, repetitive, and contained many irrelevant assertions. Further, Servpro could not sufficiently prepare its case because, *inter alia*, many of the counts alleged by Appellant did not identify whether the count pertained to some or all the defendants. Thus, it was proper to dismiss Servpro.

Second, Appellant contends that Judge Anders erred by prematurely dismissing her counts of tortious interference against Appellees and Servpro.[5] To recover for tortious interference with business relations, a plaintiff must aver facts showing that: (1) a contractual or prospective contractual relationship existed with a third party, (2) there was a purpose or intent to harm the existing or prospective relation on the part of the defendant, (3) the defendant did not have a

---

[5] The Order entered on May 19, 2020 by Judge Anders dismissed Appellant's tortious interference count against Servpro with prejudice because she failed to produce a concise pleading under Pa.R.C.P. 1019(a). As such, the discussion is limited to Judge Anders' dismissal of Appellant's tortious interference count against Appellees.

privilege or justification, and (4) there was actual damage because of the defendant's conduct. Pawlowski v. Smorto, 588 A.2d 36, 39-40 (Pa.Super. 1991).

In her Second Amended Complaint, Appellant did not aver facts to establish that Appellees' actions caused a change to her business relations with Servpro. Instead, she alleged that the business relationship changed because she had discharged Servpro. Pltf's Second Amended Compl. at ¶ 508-511. While Appellant contends the dismissal of her tortious interference count against Appellees was premature because it was proven at trial, this reasoning directly conflicts with the nature of preliminary objections. Accordingly, this count was properly dismissed.

## VII. APPELLANT DID NOT REQUEST THE COURT FOR RELIEF FOR CHARLES DOYLE'S FAILURE TO FULLY COMPLY WITH THE SUBPOENA.

Appellant contends that the Court erred by not enforcing its subpoena requiring Servpro's Charles Doyle to bring to trial the inventory list of possessions removed from her apartment. For a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of proceedings; the failure to do so will result in a waiver of the issue. Kaufman v. Campos, 827 A.2d 1209, 1212 (Pa.Super. 2003). Here, Doyle was subpoenaed to testify and provide records directly related to the services Servpro provided Appellant. However, he did not bring an inventory list of the possessions taken from Appellant's apartment. While Appellant expressed dissatisfaction over this development, she did not file a motion to enforce the subpoena, nor did she request the Court for relief during his testimony. The only objection she lodged with respect to the subpoena was after the jury began their deliberations. N.T. 06/07/22, p. 9. Thus, this issue is waived.

## VIII. THE COURT CONDUCTED VOIR DIRE TO SECURE A COMPETENT, FAIR, IMPARTIAL, AND UNPREJUDICED JURY.

The purpose of voir dire is "to secure a competent, fair, impartial, and unprejudiced jury." Mansour v. Linganna, 787 A.2d 443, 448 (Pa.Super. 2001). The Pennsylvania Rules of Civil

Procedure provide that: "[t]he parties, or their attorneys may conduct the examination of the prospective jurors unless the court itself conduct the examination . . ." Note to Pa.R.C.P. No. 220.3(c). The scope, manner, and procedure of a voir dire examination is determined at the trial judge;s discretion. Id. While parties are entitled, on voir dire, to examine prospective jurors to obtain pertinent information relating to potential bias or prejudice, the trial court's purpose is to secure a fair and impartial jury and, as such, a decision made about the manner or procedure will not be reversed in the absence of palpable error. Id.

Appellant argues that the Court erred by not allowing her to lead individual voir dire or ask potential jurors questions from her PowerPoint and explain unconscious bias. She further contends that the Court erred when it denied her additional time to examine the voir dire transcript before exercising her strikes. Appellant's arguments lack merit. The Court did not err by facilitating individual voir dire, as Pa.R.C.P. No. 220.3 permits the trial judge to conduct the voir dire examination. At individual examination, Appellant was permitted to ask relevant follow-up questions to uncover potential bias and impartiality where a potential juror answered one or more of the standard voir dire questions in a manner that called for additional inquiry.

Likewise, Appellant's second assertion is entirely unfounded. Prior to jury selection, Appellant did not file a transcript request for voir dire. Appellant cannot assert that the Court denied her additional time to review the voir dire transcript because there was no voir dire transcript. Accordingly, the Court did not abuse its discretion by deciding the scope, manner, and procedure of a voir dire examination.

## IX. THE CONTENTS OF THE PHILADELPHIA INQUIRER ARTICLE DID NOT CONSTITUTE INDISPUTABLE ADJUDICATIVE FACTS.

The law is clear: "[I]n order for a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." MB Fin. Bank

33

v. Rao, 201 A.3d 784, 788 (Pa.Super. 2018). Further, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial courts territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned." Pa.R.E. 201(b). Appellant contends that the Court erred by refusing to take judicial notice of a Philadelphia Inquirer article regarding the effects of past evictions on the ability to find new housing. However, the Court could not take judicial notice of the because the content did not constitute indisputable adjudicative facts. Rather, the assertion that eviction actions, irrespective of the outcome, can cause future rejections from potential landlords is not a well-known fact in this Court's jurisdiction. Further, Appellant failed to explain how its preclusion impacted the verdict.

## X.  THE COURT REASONABLY ACCOMMODATED APPELLANT.

Appellant asserts that the Court erred by not honoring the disability accommodations she formally requested prior to trial. She argues that the Court made it difficult for her to function during the trial by not providing a lapel microphone or allowing her to use the restroom on the same floor as the courtroom. In addition, Appellant asserts that the Court was unaware of her non-physical disabilities and that she was subjected to the speed of a traditional trial despite her disabilities.

Here, the Court and its staff were aware of those requests and accommodated them to the best of the First Judicial District's ability. First, the lapel microphone was not operational during the trial, so Appellant was provided a wireless microphone. The wireless microphone allowed her to communicate effectively with the jury. Second, Appellant could not use the restroom on the courtroom floor because of the potential for inappropriate interactions between jurors and parties. Nonetheless, the Court gave her as much time as she needed to use the restroom. Third, Appellant

fails to elaborate on how the accommodations provided by the Court impacted the jury verdict. As such, the Court, including its staff, did the best it could to reasonably accommodate Appellant, and she suffered no prejudice, as further evidenced by the fact that the jury came back with a verdict in her favor.

## XI. THE COLLATERAL SOURCE RULE WAS NOT APPLICABLE BECAUSE INSURANCE WAS NOT PART OF THE EVIDENCE PRESENTED TO THE JURY.

Appellant contends that the Court erred by failing to instruct the jury on the collateral source rule, thereby preventing her from receiving a fair damages award. The standard of review for jury instructions is whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. Gorman v. Costello, 929 A.2d 1208, 1211-1212 (Pa.Super. 2007). "A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. . . Consequently, the trial court has wide discretion in fashioning jury instructions." Amato v. Bell & Gossett, 116 A.3d 607, 621 (Pa.Super. 2015) (citing Commonwealth v. Sandusky, 77 A.3d 663, 667 (Pa.Super. 2013)). A trial court's refusal to give a requested charge does not amount to a clear abuse of discretion or an error of law unless the refusal prejudiced the appellant. Id.

At the outset of trial, the Court offered to give the collateral source instruction to the jury if Appellant wanted to mention insurance. N.T. 06/01/22, pp. 8-10. She initially elected to do so, but then quickly changed her mind. N.T. 06/01/22, pp. 10-13. Subsequently, the parties agreed not to discuss or reference Appellant's insurance, and the Court instructed witnesses on this agreement prior to their testimony. Appellant also did not object to the Court's instructions during the charging conference, and it was not until after the jury began deliberating that she made an untimely objection on the record. N.T. 06/07/22, p. 10.

At trial, neither party discussed nor referred to Appellant's insurance.[6] Further, her inability to show how she was prejudiced by the Court's failure to include the instruction is of equal importance. The purpose of the collateral source rule is to protect plaintiffs from low verdicts merely because coverage for the damages was provided from a collateral source, such as insurance. Beechwoods Flying v. Al Hamilton Contracting Corp., 476 A.2d 350, 352 (Pa. 1984). Given that Appellant's insurance was not mentioned during the trial, such an instruction might have confused or misled the jury; in fact, it might have worked to her detriment. Thus, the Court's failure to instruct the jury on the collateral source rule was not improper.

## Discussion of Appellees' Claims

**I.      IT WAS APPROPRIATE TO ORDER A NEW TRIAL ON THE ISSUE OF DAMAGES DUE TO THE FALSE CHOICE PRESENTED TO THE JURY.**

The decision to order a new trial in a civil action lies within the trial court's discretion. Johnson v. White, 964 A.2d 42, 46 (Pa.Cmwlth. 2009). Such a decision will not be reversed unless there has been a clear abuse of discretion or error of law. Fisher Sprinkler Co., Inc. v. Ide, 451 A.2d 1015, 1017 (Pa.Super. 1982). Additionally, a trial court may order a new trial on the issue of damages where: "(1) the question of liability is not intertwined with the question of damages, and (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto." Banohashim v. R.S. Enters., LLC, 77 A.3d 14, 23 (Pa.Super. 2013) (citing Gagliano v. Ditzler, 263 A.2d 319, 320 (Pa. 1970)).

Appellees argue that the Court abused its discretion by ordering a new trial on the issue of damages. They claim that the Court disregarded the jury's intent because the jury effectively apportioned damages between Appellees: apportioning 60% of the verdict amount to Bozzuto and

---

[6] Insurance was briefly mentioned a few times during the trial, but the references were not related, either directly or indirectly, to Appellant's insurance or the recovery she received from her insurance company.

40% to Fifteen Hundred. The Court disagrees. It erred when it misapplied the rules of contract law when it denied Appellees' Summary Judgment Motion to dismiss Bozzuto as a defendant. By not dismissing Bozzuto during pretrial proceedings, the breach of contract claim was permitted to go forward against a non-party to the Lease Contract. As a result, the jury's decision on apportioning liability and damages between the two Appellees was a decision they should not have been permitted to make.

Moreover, the Court cannot determine the jury's true intent regarding damages against Fifteen Hundred. The verdict sheet did not allow the jury to state which contract provisions each Appellee breached and what amount of the damages should be attributed to each breach. To correct this error and fairly determine the damages against Fifteen Hundred, a new trial on the issues of damages is required. The issue of liability is not intertwined with the issue of damages, the former of which has already been fairly determined.

## II. APPELLANT ESTABLISHED THE EXISTENCE OF THE LEASE CONTRACT BY A PREPONDERANCE OF THE EVIDENCE.

A successful cause of action for breach of contract requires a plaintiff to demonstrate: (1) the existence of a contract between plaintiff and defendant, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from a breach of that duty. Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1125 (Pa.Super. 2004). Such a showing must be made by a preponderance of the evidence. Snyder v. Gravell, 666 A.2d 341, 343 (Pa.Super. 1995). Appellees assert that the Court erred by denying its posttrial motion, contending that as a matter of law Appellant did not establish her breach of contract claim because she failed to: (1) introduce the Lease Contract into evidence, (2) show that the parties duly executed the Lease Contract, and (3) show that the language relied upon was part of the operative Lease Contract.

The instant matter presents a close question of law and fact. It should be noted that neither the existence of the Lease Contract nor its execution were issues that the parties had ever disputed up until Appellees' motion for nonsuit. N.T. 06/06/22, pp. 146-48. The primary issue all along, including most of the trial, was whether Appellees breached the Lease Contract and, if so, what damages Appellant sustained from their breach. In fact, the Lease Contract's existence was not a factual issue put before the jury. N.T. 06/06/22, pp. 235-36. Further, Appellees did not object to the Court's instructions on breach of contract, which did not include an instruction that Appellant had to prove the existence of a contract as a prerequisite for breach.

Nevertheless, Appellant was required to prove her case, including the existence of a contract. She did so, albeit narrowly. Appellant moved eight provisions of the Lease Contract into evidence: 4 ("Lease Term"), 33 ("Responsibilities of Owner"), 39 ("Move-out Notice"), 40 ("Move-out Procedure"), 44 ("Deposit Return, Surrender, and Abandonment"), 12 ("Early Move-out; Re-Renting Charges"), 13 ("Damages and Reimbursement"), and 43 ("Security Deposit Deductions and Other Charges"). Exhibit List.[7] During direct examination, she showed exhibits to the jury in her PowerPoint and testified that Appellees' actions breached the following provisions:

4. LEASE TERM. The initial term of the Lease Contract begins on the [1st] day of [May], [2017], and ends at midnight the [30th] day of [April], [2019]. This lease Contract will automatically go month-to-month unless either party gives at lease [60] days written notice of termination or intent to move-out as required in this Lease Contract. . .

33. RESPONSIBILITIES OF OWNER. We'll act with customary diligence to:
(1) Keep common areas reasonably clean,
(2) Maintain fixtures, furniture, hot water, heating, and A/C equipment;
(3) Substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

---

[7] Provisions 12 ("Early Move-out; Re-Renting Charges") and 13 ("Damages and Reimbursement") of the Lease Contract were both admitted into evidence, but it is unclear from the trial transcript whether those provisions were definitively shown as exhibits to the jury by Appellant. Additionally, Appellant elicited testimony with respect to provision 12, but did not elicit testimony from any witnesses with respect to provision 13 or directly testify that Appellees' breached provision 13.

38

(4) Make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

39. MOVE-OUT NOTICE. Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in this Lease Contract. Oral move-out notice will not be accepted and will not terminate the Lease Contract.
- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

40. MOVE-OUT PROCEDURES. The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in re-renting charges. You're prohibited from applying any security deposit to rent. You won't stay beyond the day you are supposed to move out.

N.T. 05/31/22, pp. 178-82. Appellees did not object to her testimony with respect to the above-mentioned provisions or the accompanying exhibits shown in her PowerPoint to the jury.

With respect to provision 33 ("Responsibilities of Owner"), she testified on direct examination that Appellees breached their promise to comply with applicable laws regarding safety and sanitation by failing to remediate the flood damage and filing for emergency injunctive relief. N.T. 05/31/22, pp. 178-80. She also testified that they breached the Lease Contract by not following the requirements of provisions 39 ("Move-Out Notice") and 40 ("Move-Out Procedures"). N.T. 05/31/22, pp. 181-82; N.T. 06/02/22, pp. 34-35. She testified that she did not provide Appellees a notice of intent nor did she present a written move-out form 60 days in

39

advance as required by provision 39, and there was no written agreement between them to prematurely end the lease, as required in provision 40. N.T. 05/31/22, pp. 181-82.

She further testified that provision 44 ("Deposit Return, Surrender, and Abandonment") required all keys to be returned to end her Lease Contract, and that Appellees breached the Lease Contract by not enforcing that provision. N.T. 05/31/22, pp. 186-87; N.T. 06/02/22, pp. 34-35. Finally, she testified that provision 43 ("Security Deposit Deductions and Other Charges") made her liable for any damage to the apartment but that she was never charged even though Appellees' witnesses falsely testified at the injunction hearing that she caused damage to the apartment. N.T. 05/31/22, pp. 187-93.

In addition, Michael Lerario testified that he recognized provisions 39 ("Move-Out Notice") and 40 ("Move-Out Procedures") from the Lease Contract. N.T. 06/03/22, pp. 120-21. Lerario testified that the 60-day advance notice requirement was not applicable to her situation because she had made the apartment untenable. N.T. 06/03/22, p. 124. When asked whether he agreed that provision 12 ("Early Move-Out; Re-Renting Charges") of the Lease Contract contained an early move-out re-rental charge, Lerario testified that the provision was standard for the industry. N.T. 06/03/22, p. 127.

When questioned by Appellant on direct examination, David McMurtrie also acknowledged the existence of the Lease Contract:

Q. You heard Mr. Lerario say on Friday there is exceptions in my case why the landlord does not have to obey paragraph 39, 40, 44 and 43 in the contract of the specific steps the tenant must take to terminate a contract early?

A. That's what the tenant must take.

. . .

Q. This is a breach of contract case. Tell me what's the exception? Why didn't you have to obey those rules of the contract?

40

A.    You violated the terms [of] your lease.

Q.    Mr. McMurtrie, you had me sign papers that then a lawyer said 'you [Appellant] left on your own.' 'You [Appellant] took away your possessions, and [] signed the paper that you wanted to leave,' but those aren't the three terms that must be complied with to show you want to leave.

A.    The lease can be amended in writing.

Q.    But you didn't amend it.

A.    The paperwork that you signed. You terminated your lease.

. . .

Q.    However, in order to show -- to pretend that someone wanted to leave their property early that's, why you would need the keys. Because paragraph 44 says, your apartment is not considered abandoned until you hand in all keys.

A.    And you did, other than the set you said you lost.

. . .

Q.    Is it true that in a contract that you gave me to sign, every amendment to the contract has a title, amendment to the contract, and it's signed by both people because that's the law in Pennsylvania? If you have an amendment to a contract, it must be titled that. It must be signed by both parties [ ].

A.    The lease does contain amendments, and they're signed by both parties.

. . .

Q.    Are you aware that you lost the case to permanently evict me and no judge approved you getting legal fees from me, and that's what the procedure you have to do? You unilaterally charge legal fees.

A.    The lease doesn't say that it has to be approved by the judge. It says you're responsible for all legal fees for us to enforce the lease.

. . .

Q.    Yes or no. In the contract it says if you don't return all keys, you will be charged. Did you charge me for those keys you claim that I said I lost.

A.    No.

41

Q. No, you did not?

A. No reason to.

Q. It says it in the contract.

A. It's not worth the $7.

N.T. 06/06/22, pp. 51-77; 138-139. Accordingly, the Court did not commit an error of law when it denied Appellees' post-trial motion regarding Appellant's alleged failure to establish the existence of the Lease Contract at trial.

III. APPELLANT'S ALLEGATIONS OF A BREACH OF IMPLIED WARRANTY OF HABITABILITY AND A RIGHT TO QUIET ENJOYMENT WERE THEORIES CONTAINED WITHIN THE BREACH OF CONTRACT CLAIM.

Appellees assert that the Court violated the coordinate jurisdiction rule by allowing Appellant to present allegations of breach of implied warranty of habitability and quiet enjoyment as part of her breach of contract claim at trial when those claims had been separately pled and dismissed with prejudice on preliminary objections. The coordinate jurisdiction rule "commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal questions previously decided by a transferor trial judge." Zane v. Friends Hosp., 836 A.2d 25, 29 (Pa. 2003). This rule prevents a judge from re-opening issues decided by another judge of the same court. Riccio v. Am. Republic Ins. Co., 705 A.2d 422, 425 (Pa. 1997).

On May 19, 2020, Judge Anders' Order dismissed with prejudice all counts against Appellees except for Breach of Contract from Appellant's Second Amended Complaint. Two of the dismissed counts were "Breach of Statutory Duty Beyond Contract Including [Un-waivable] Implied Warranty of Habitability 'IWOH' and Breach of Tenant Dr. Lerner's Quiet Enjoyment of Her Home" (Count 9) and "Trespass in Violation of Right to Quiet Enjoyment and Invasion of

Privacy and Intrusion on Seclusion in Unauthorized Photos Taken By [Fifteen Hundred] of Dr. Lerner's Possessions" (Count 40). Nonetheless, Appellant's Breach of Contract claim, the only remaining count, averred that Appellees:

> [B]reached the contract including by improper and illegal actions FHB took to deny her *quiet enjoyment of her home. . .* in a.) failing over the course of more than a week to complete the straightforward basic steps legally required and promised to remediate Dr. Lerner's apartment from two floods they caused there and instead making daily different questionable excuses why they could not do so; b.) failure to arrange a comprehensive realistic plan with non-contradictory directives by all FHB staff on how to document and then dispose of flood ruined items or where to place non-ruined items; c.) illegally insisting she pay rent for this *uninhabitable apartment. . .*

Pltf's Second Amended Compl. at ¶ 987 (emphasis added). As such, although Appellant was not permitted to present breaches of implied warranty of habitability or quiet enjoyment as separate and distinct causes of action, the Court allowed her to use the alleged breaches of these two covenants to prove her breach of contract claim.

Furthermore, Appellees' contention contradicts with the gist of the action argument made in their preliminary objections that were subsequently sustained. The gist of the action doctrine precludes a party from raising tort claims that are collateral to claims sounding in breach of contract. See Brickman Group, Ltd. v. CGU Ins. Co., 865 A.2d 918, 927 (Pa.Super. 2004). ("As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims."). In their preliminary objections, Appellees argued that Count 9 and Count 40 should be dismissed from Appellant's Second Amended Complaint pursuant to the gist of the action doctrine because the tortious conduct she alleged in those counts effectively re-asserted or re-packaged claims that were already encompassed in her breach of contract claim. Dfts' Preliminary Objections to Pltf's Second Amended Compl. at ¶¶ 64-65; 92. Accordingly, the

43

Court's ruling comports with the gist of the action doctrine that Appellees argued in preliminary objections.[8]

## IV. COLLATERAL ESTOPPEL IS NOT APPLICABLE FOR FINDINGS MADE DURING PRELIMINARY INJUNCTION PROCEEDINGS.

Appellees argue that the Court erred by permitting Appellant to collaterally attack the credibility determinations and legal conclusions made by Judge Anders in the injunction case. They claim this is so because the order entered in favor of Appellees became a final order when the case was voluntarily discontinued, and no party filed an appeal.

The doctrine of collateral estoppel applies where:

(1) An issue decided in a prior action is identical to the one presented in a later action;
(2) The prior action resulted in a final judgment on the merits;
(3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and
(4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998). In Santoro v. Morse, the Superior Court found that a preliminary injunction proceeding does not fully and finally adjudicate the parties' rights, and the doctrine of collateral estoppel is not applicable to any findings made by the court during such proceedings. Santoro v. Morse, 781 A.2d 1220, 1229 (Pa.Super. 2001). Even where a trial court conducted a complete and exhaustive hearing based on the merits of the controversy, such a hearing does not "convert the proceeding for a preliminary injunction into a final hearing." Id; see also Humphreys v. Cain, 477 A.2d 32, 35 (Pa.Cmwlth. 1984) (a decision regarding a preliminary injunction is not binding for purposes of a final adjudication.).

---

[8] This ruling comports with the doctrine that the implied warranty of habitability is implied in every lease of residential property and cannot be waived. Echeverria v. Holley, 142 A.3d 29, 34 (Pa.Super. 2016); Kohl v. PNC Bank Nat. Ass'n, 912 A.2d 237, 248 (Pa. 2006); Fair v. Negley, 390 A.2d 240, 243 (Pa.Super. 1978) (a waiver of the implied warranty of habitability in a residential lease violates the public policy sought to be achieved by the warranty, and as such cannot be waived.).

Shortly after the flood and attempted remediation, Appellees filed a petition for an emergency preliminary injunction and a hearing was scheduled. Upon the conclusion of the hearing, Judge Anders made credibility determinations with respect to William Green, Michael Lerario, and David McMurtrie and issued a preliminary injunction. 08/09/17 Order for Preliminary Injunction; N.T. 08/08/2017, p. 62. Notwithstanding this, the Court permitted Appellant at trial to question those same witnesses about the same issues because the prior proceeding did not fully and finally adjudicate the parties' rights. Although the injunction became the final order of the case when the matter was voluntarily discontinued, it did not then also become a final order for purposes of collateral estoppel.

## CONCLUSION

For the foregoing reasons, the Court respectfully requests that it be affirmed.

BY THE COURT:

**MICHAEL E. ERDOS, J.**

DATE: April 14, 2023

45